IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:24-CV-720-RJ

ANITA TRIMYER,

        Plaintiff/Claimant,

v.

FRANK J. BISIGNANO,
*Commissioner of Social Security*,

        Defendant.

O R D E R

This matter is before the court on the parties' briefs filed pursuant to the Supplemental

Rules for Social Security Actions. [DE-13, -16]. Claimant Anita Trimyer ("Claimant") filed this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her

application for a period of disability and Disability Insurance Benefits ("DIB"). The time for

further briefing has expired, and the pending motions are ripe for adjudication. Having carefully

reviewed the administrative record and the briefs submitted by the parties, the decision of the

Commissioner is reversed and the matter is remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on December

17, 2021, alleging disability beginning December, 20, 2019. (R. 17, 192–98). The claim was

denied initially and upon reconsideration. (R. 65–91). A hearing before Administrative Law Judge

("ALJ") Anderson was held on January 12, 2024, at which Claimant, represented by counsel, and

a vocational expert ("VE") appeared and testified. (R. 32–64). On March 29, 2024, the ALJ issued

a decision denying Claimant's request for benefits, (R. 14–31), and the Appeals Council denied

Claimant's request for review, (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set

2

forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity from the alleged onset date of December 20, 2019. (R. 19). Next, the ALJ determined Claimant had the severe impairments of obesity; sacroiliitis; lumbar spine degenerative disc disease; anxiety disorder; osteoarthritis of the right knee and history of total left knee

3

replacement; migraine headache; and depressive disorder. *Id.* The ALJ also found that Claimant's

basal skin cancer was a non-severe impairment within the meaning of the statute. *Id.* At step three,

the ALJ concluded Claimant's impairments were not severe enough, either individually or in

combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. (R. 20–21). Applying the technique prescribed by the regulations, the ALJ

found that Claimant's mental impairments have resulted in moderate limitations in interacting with

others and mild limitations in understanding, remembering, or applying information; concentrating,

persisting, or maintaining pace; and adapting or managing oneself. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity

("RFC"), finding Claimant had the ability to perform light work[1] with the following limitations:

> can frequently climb ramps and stairs; he [sic] can occasionally climb ladders, ropes
> or scaffolds; she can frequently balance, stoop, kneel, crouch, and crawl; she can
> have occasional exposure to unprotected heights and moving mechanical parts; she
> can occasionally operate a motor vehicle[;] and she can have frequent interaction
> with supervisors, co-workers[,] and the public.

(R. 21–26). In making this assessment, the ALJ found Claimant's statements about her limitations

were not entirely consistent with the medical evidence and other evidence in the record. (R. 22).

At step four, the ALJ concluded Claimant was able to perform her past relevant work. (R. 26–27).

## V. DISCUSSION

Claimant asserts the ALJ erred by failing to account for the vocationally limiting effects of

her migraine headaches in the RFC determination. Pl.'s Br. [DE-13] at 5–13. The Commissioner

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

contends that the ALJ properly evaluated the evidence and that substantial evidence supports the ALJ's RFC. Def.'s Br. [DE-16] at 6–12.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

In October 2019, Claimant worked as a contract specialist, preparing government contracts,

5

when she slipped on a recently repaved sidewalk at her workplace, resulting in a meniscus tear in her left knee. (R. 38–39, 42). In December 2019, Claimant stopped working after her knee gave out completely, and she ultimately required knee replacement surgery in February 2021. (R. 42–43). In addition to knee issues, Claimant indicated on her application she suffers back pain. (R. 44–45). Although Claimant did not list migraine headaches on her initial disability application, which she suffered from regularly, since then her migraines have become more frequent. (R. 45).

At step two the ALJ found Claimant's migraines to be a medically determinable severe impairment. (R. 19). In the RFC determination the ALJ referenced Claimant's reports of migraines several times. (R. 22–25). First, the ALJ noted Claimant testified at the hearing that she had four migraines per week with one "bad" headache per month, and that the medication she had to take to treat a migraine made her drowsy. (R. 22). Next, the ALJ referenced a January 2022 medical appointment where Claimant estimated having two migraines per month, noting an increase in headaches with weather and stress. (R. 23). In September 2023, Claimant told her primary care provider she continued to have migraines at the same frequency, twice a month. (R. 24). The ALJ noted it was not until November 2023 that the record indicates Claimant reported an increase in migraines to a physician, suffering from around four per week. *Id.* Claimant kept a log of her migraines from November 10, 2023 through January 1, 2024, which indicated she suffered fourteen (14) episodes during that period. *Id.* The ALJ ultimately found Claimant's allegations of disability were "not consistent with the minimal objective findings," (R. 25), but did find "additional postural and environmental limitations to account for her obesity, migraine headaches and reported drowsiness from medications," (R.26). The ALJ does not discuss which limitations were included to account for Claimant's migraines, but merely that they were included.

Claimant argues that the RFC determination fails to account for her frequent migraine

6

headaches and how they affect her ability to work. Pl.'s Br. [DE-13] at 6–7. Noting the lack of narrative discussion, Claimant asserts it *appears* the reason the ALJ excluded limitations related to her migraines in the RFC may have been because of a lack of supporting objective evidence on physical examinations, which would have been improper. *Id.* at 7 (citing *Arakas v. Comm., Soc. Sec. Admin.*, 983 F.3d 83, 97–98 (4th Cir. 2020) ("ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence."); *Strickland v. Barnhart*, 107 F. App'x 685, 689 (7th Cir. 2004)). Furthermore, the Claimant references the ALJ's finding that she only suffered from one "bad" migraine per month, which may have resulted in discounting Claimant's less severe headaches, that she claims are still debilitating, but for a shorter length of time. Pl.'s Br. [DE-13] at 9 (citing R. 25).

The Commissioner asserts that the ALJ provided a logical path of how the evidence in the record supports the RFC findings. Def.'s Br. [DE-16] at 7. To support this assertion the Commissioner makes several arguments, usually citing to record evidence, rather than the ALJ opinion, that the ALJ could have used to support a finding that the RFC determination already accounts for, or does not need to address, Claimant's migraines. *Id.* at 8–10.

First, the Commissioner argues Claimant's failure to list migraine headaches as an impairment on her initial disability application could reasonably allow the ALJ to draw a meaningful inference that her migraines were not debilitating. Def.'s Br. [DE-16] at 7 (citing 20 C.F.R. § 404.1520b; *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992) (finding a claimant's failure to follow medical advice supported ALJ's inference that the claimant's pain was not as severe as alleged)). Claimant testified that she originally applied for benefits based exclusively on her knee

7

and back issues, but since then her headaches have become more frequent. (R. 45). Claimant went from having two migraines a month in September 2023 to four migraines a week in November 2023. (R. 24, 1116–36). Furthermore, nowhere in the opinion does the ALJ assert he drew any inference from the fact Claimant did not list migraine headaches as an impairment on her application initially; in-fact, the ALJ found migraine headaches to be a severe impairment, (R. 19), and indicated he found "postural and environmental limitations to account for her obesity, *migraine headaches and reported drowsiness from medications*," (R. 26) (emphasis added) (citing R. 395–417, 957–93, 1116–36). It is not this court's role "to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox v. Colvin*, 632 Fed. App'x 750, 755 (4th Cir. Dec. 17, 2015).

Second, while conceding the record is replete with diagnoses of migraine headaches, the Commissioner asserts "diagnosis alone does not show that an impairment is severe." Def.'s Br. [DE-16] at 8. This, again, overlooks the fact that the ALJ did find Claimant's migraines to be a severe impairment. (R. 19). The Commissioner goes on to argue that although Claimant has been diagnosed with migraines, she failed to identify any functional limitations that would affect her ability to work. Def.'s Br. [DE-16] at 8. Claimant testified that she suffers from one "bad," or severe, migraine a month and three to four less severe migraines per week. (R. 47). She indicated the severe migraines last about six hours and are nonresponsive to medication, meaning she is forced to wait them out in a dark room. (R. 47). The less severe migraines are responsive to medication, with Claimant feeling a little better within a couple hours; however, the medication still makes her drowsy and she is unable to do work around the house or drive even after the migraine symptoms improve. (R. 47–48). With both types of migraines Claimant indicated she is unable to focus on anything except the pain. (R. 47).

8

The opinion appears to indicate the ALJ reasoned Claimant only suffered one migraine a month that could affect her ability to work, stating "[t]he claimant consistently reported migraines with a worsening in frequency on more recent evaluations; however, the claimant indicated having only one "bad" episode per month." (R. 25). However, this rationale overlooks the fact that Claimant asserts she suffers an additional twelve to sixteen migraines per a month. (R. 47). Although these less severe migraines do respond to medication, Claimant testified the medication takes a couple hours to have an effect and still leaves her unable to do work around the house or drive. (R. 47–48). In an unpublished Fourth Circuit opinion, *Woody v. Kijakazi*, the court remanded the case for further administrative proceedings, noting that although the claimant's migraine treatment did improve her symptoms, the ALJ still needed to provide a narrative discussion to determine whether, despite treatment, the claimant's symptoms were severe enough to cause her to be absent from work. No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023). Similarly, the ALJ here failed to address how the RFC limitations account for potential absences or extended time off task due to Claimant's migraines. Given that the VE testified that work would be precluded for someone who missed one and a half to two days of work per month, it follows Claimant's migraines could be disabling, (R. 64), but it is not this court's province to reweigh the evidence, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir.1962)). *See Lamm v. Bisignano*, No. 5:24-CV-617-D, 2026 WL 346681, at *5 (E.D.N.C. Jan. 5, 2026) (finding remand appropriate where the claimant suffered two to four migraines per a month and his migraine medication took thirty minutes to an hour to be effective and yet the ALJ concluded no limitations were required to address the claimant's time off task or absenteeism), *adopted*, 2026 WL 331740 (E.D.N.C. Feb. 6, 2026); *Victor R. v. Colvin*, No. 1:24CV205, 2025

9

WL 33699, at *8 (M.D.N.C. Jan. 6, 2025), (finding the claimant's testimony that he suffered one migraine a week that would leave him unable to do anything but lay in a dark room put the issue of "migraine related time off-task and absences squarely before the ALJ"), *adopted sub nom. Rivera v. Colvin*, 2025 WL 307347 (M.D.N.C. Jan. 27, 2025).

Third, the Commissioner argues the ALJ properly accounted for Claimant's history of migraines by including the limitations of occasional exposure to unprotected heights and moving mechanical parts and occasional operation of a motor vehicle. Def.'s Br. [DE-16] at 8 (citing R. 22). However, the ALJ never asserted that those limitations are intended to specifically address Claimant's migraines. On the contrary, the ALJ stated he reduced Claimant's residual function capacity recognizing "limitations because of her conditions, including her chronic diffuse pain and reduced range of motion in the spine, compounded by obesity and use of various medications." (R. 25). The Commissioner goes on to reference portions of Claimant's medical records that were negative for reports of symptoms of headaches, blurred vision, dizziness, or nausea and vomiting. Def.'s Br. [DE-16] at 9. However, even if the ALJ had decided there was inadequate objective evidence of Claimant's migraines, the ALJ cannot rely on a lack of objective medical evidence to discount Claimant's subjective complaints. *See Arakas*, 983 F.3d at 97–98; *Strickland*, 107 F. App'x at 689 ("The ALJ also appears to have thought, incorrectly, that the [normal] neurological test results somehow undercut [the plaintiff]'s claims that her migraines are severely painful. In fact, nothing in the record suggests that these tests can confirm either the existence of migraines or their likely severity.").

Fourth, the Commissioner indicates the ALJ found no need for additional RFC limitations to account for Claimant's migraines because the record "demonstrates good compliance with treatment, a favorable tolerance of the treatment[,] and effective symptom control." Def.'s Br.

10

[DE-16] at 9 (citing R. 1120 (during a September 2023 well-woman visit Claimant's physician noted Claimant had good compliance and tolerance of her migraine treatment and good symptom control); *Barbare v. Saul*, 816 F. App'x 828, 834 (4th Cir. 2020) ("It goes without saying that '[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling.'") (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)). Although the Commissioner reasons the ALJ found no additional functional limitations for Claimant's migraines, due to her good tolerance of treatment, the ALJ does not adequately address this contention in the opinion. (R. 25). While the ALJ appears to only take into account Claimants one "bad" migraine she has per a month, (R. 25), the court is not in the position to speculate this was because her other migraines would respond to treatment after a couple hours, *see Sinclair v. Astrue*, No. CIV.A. CBD-09-1470, 2010 WL 5237843, at *5 (D. Md. Dec. 16, 2010) ("The Court cannot rely on ad hoc observations of the Commissioner to now fill in the gaps on an otherwise inadequate decision by the ALJ.").

Fifth, the Commissioner asserts the Claimant "simply asks for blind acceptance of her subjective complaints despite the inconsistent evidence in the record." Def.'s Br. [DE-16] at 10–11. The Commissioner goes on to suggest the ALJ found objective evidence in the record that highlighted inconsistencies in Claimant's subjective reports of the severity of her migraine symptoms, thus finding no basis to include additional RFC limitations. *Id.* at 11. The ALJ did find generally that Claimant's "allegations of disability are not consistent with the minimal objective findings." (R. 25). However, as Claimant explains in her brief "migraines are not generally detectable through objective testing or physical examinations." Pl.'s Br. [DE-13] at 8 (citing *Taylor v. Astrue*, No. 7:10-cv-149-FL, 2011 WL 2669295, at *4 (E.D.N.C. May 23, 2011) ("In discounting Claimant's complaints of pain associated with her headaches, it appears that the ALJ relied, at least in part, on a lack of objective evidence. However, any such reliance by the ALJ

11

was error as migraines cannot be diagnosed or confirmed through laboratory or diagnostic testing) (citations omitted), *adopted*, 2011 WL 2669290 (Jul. 7, 2011); *Eden v. Berryhill*, No. 2:16-cv-03703, 2017 WL 1404380, at *19 (S.D.W. Va. Mar. 28, 2017), *adopted*, 2017 WL 1398341 (S.D.W. Va. Apr. 18, 2017) (noting that unlike many medical conditions, migraines are not detectable in laboratory testing and thus a lack of objective evidence of migraines is not determinative); *Harrington v. Colvin*, No. 7:17-cv-20-FL, 2016 WL 320144, at * 4 (E.D.N.C. Jan. 4, 2016) (lack of objective evidence merely suggests that cause of headaches cannot be identified through testing, not that claimant does not suffer headaches), *adopted*, 2018 WL 311284 (Jan. 25, 2016)). It is the ALJ's duty to "weigh the evidence, resolve material conflicts in the record, and decide the case accordingly." *Simpson v. Saul*, No. CV 5:19-0583-BHH-KDW, 2020 WL 1930614, at *9 (D.S.C. Apr. 10, 2020) (citing *Richardson v. Perales*, 402 U.S. 389, 399, (1971)), *adopted*, 2020 WL 1922795 (D.S.C. Apr. 21, 2020). Even if there are inconsistencies in the record, "[t]his court may not reweigh the evidence or substitute its own judgment for the Commissioner's, even if it finds the evidence is susceptible to more than one rational interpretation." *Id.* (citing *Hays*, 907 F.2d at 1456)).

Furthermore, although the ALJ summarizes the evidence of Claimant's migraines in the opinion, there is no narrative discussion to indicate how the ALJ determined the migraines impacted her ability to work. *See Garza v. Kijakazi*, No. 5:21-CV-268-FL, 2022 WL 4361923, at *5 (E.D.N.C. Aug. 24, 2022) (finding remand required where ALJ failed to build a logical bridge between evidence relating to plaintiff's migraines and conclusion that they did not impact the ability to work), *adopted*, No. 5:21-CV-268-FL, 2022 WL 4358068 (E.D.N.C. Sept. 20, 2022). Therefore, it is unclear how the ALJ accounted for Claimant's migraines in formulating the RFC. Because the ALJ's RFC assessment lacks the required "logical explanation" connecting the

12

evidence to its conclusion related to Claimant's migraine headaches, the matter must be remanded to the Commissioner for further consideration.

## VI. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is reversed and the matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

So ordered, this the 4th day of March, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge

13